May it please the Court, under the clear language of the Guideline, a sentencing enhancement for importation of methamphetamine cannot be applied if the defendant has been given a reduction for a mitigating role in the offense. The importation enhancement and the minor role adjustment are mutually exclusive, and the application of both is error the government has conceded as much in page 11 of its brief. But to avoid the consequence of this error, the government does three things. The first thing it does is it ignores its own prosecutor's statement to the district court that the minor role reduction is accurate. And then it makes two arguments. The first argument is that the imposition of the importation enhancement was a part of a sentencing agreement, and that Molina wasn't entitled to the reduction because he was not actually a minor participant. Well, that begs the question, was there an agreement? And from the record, we can tell that there was some sort of agreement, but we don't know its parameters. And more importantly, we don't know if Molina accepted the agreement. Do the rules, the criminal rules contemplate an agreement at sentencing? It's sort of a pickle here, right? Things move fast. There was a change of attorneys. Maybe some PSR objections look good, and they just said, you know, let's strategically get those two points off. Let's just work that out as the sentencing recommendation. That's sort of what happened, it seems to me. Well, you raised two different issues. One is do the rules contemplate this? Not really. The Fifth Circuit has recognized post-plea sentencing agreements, and it has said that those post-plea agreements are not subject to Rule 11 protections. Really? However, they only enforce those agreements when they are in writing, signed by the defendant, and made a part of the record. Okay. I was looking. I sort of assumed there had to be law like that. I know you didn't write their brief. What's the case? Frankly, there are too many to count. Really? And it frequently comes up in the context of an illegal reentry case when after the client has pleaded guilty, in order to get that third acceptance or responsibility point, he waives all of his appellate rights. And then he appeals, and then the government says, wait, you've waived this, and so the court says — And that's all happening orally at a sentencing? No, that's in writing. Oh, okay. It's in writing. When the Fifth Circuit enforces that appellate waiver for that post-plea agreement, they're looking at a written document that's been signed by the defendant, that's been entered into the court. What rule do you think — what criminal rule permits that? It's got to be 11. It's a sentencing recommendation. Well, so there is a right way to accomplish what happened here, but they didn't do it that way. And so, you know, we need to look at the record as it is and not go out and speculate. They could have entered into a Rule 11C1C and said, here's the appropriate — C1B, right? It's a sentencing recommendation non-binding. Correct. You're right. Non-binding. In my mind, I was thinking binding, that if we want between this guideline range, here's our way to do it. Or they could have entered into a stipulation. And the commentary to the guidelines provide for that. And this is the commentary to Guideline 6B1.4 about stipulations. And it specifically says that it is not appropriate for the parties to stipulate to misleading or non-existent facts, even when the parties are willing to do so. Rather, the parties should fully disclose the actual facts and then explain to the court the reasons why the disposition of the case should differ from that which such facts ordinarily would require under the guidelines. Then it goes on to say, because of the importance of this and the importance of sentencing ordinarily, these stipulations should be in writing. So there are ways to accomplish this. It wasn't done in this case. And so we are left with having to speculate as to what was discussed with Molina and what was accepted. And I think the reason that we have Rule 11 and the reason that we have — If you're right, just to jump ahead because your time is moving, then we get to the more difficult strickland. Where is the constitutional deficiency, the district court having made a finding of fact, I suppose, without an evidentiary hearing, that it was a strategic decision? So what would the relief be if there is that legal uncertainty? Well, I mean, I think going back is the idea of the finding of was this a strategic decision is not supported by the record. Because all we have is sentencing counsel's affidavit. And in sentencing counsel's affidavit, he concedes that he didn't anticipate this problem, that this was an unintended consequence. So if he's saying this is an unintended consequence of my agreement, we know that he didn't discuss this with his client and that the client could not have made an informed and intelligent decision to waive these objections. And again, if you go back to the sentencing transcript, you don't have the prosecutor telling the judge, Judge, we're conceding this minor rule in exchange for waiving the rest of the objections. You don't have the defense attorney saying it was an exchange. So you've got nothing at sentencing— But you've got an affidavit in the record that says strategic and the district court then says, I make a finding that it was strategic. Do you have cases that say in resolving an ineffectiveness claim, a court can't rely on untraversed affidavits? I do not. But he did not credit Molina's statement and his sworn affidavit in support of his 2255 where he said— So you've got warring affidavits and no hearing. Exactly. So what you want is fact for just an evidentiary hearing as opposed to vacating the sentencing or getting him back to square one and rearrangement starts all over? No, because this court doesn't need to send back to an evidentiary hearing because it can avoid this mess with the alleged agreement and the affidavits by looking to what appellate counsel did. And if you're going to look at what appellate counsel did, all you have to do is look at the record on appeal at the time that he filed his brief. There was no alleged agreement. There were no affidavits. So there was nothing at the time appellate counsel filed his brief about this quid pro quo. And as far as the appellate attorney was concerned, it was objectively unreasonable for him not to raise this issue on appeal. This is a small record. There's no plea agreement. What if he thought it was intentionally relinquished? What if the appellate counsel looked at the record and said, we waive all objections? And he thought, well, then my clients intentionally relinquished this objection to the two-level enhancement for imputation. That would require, I think, reading more into the record than what meets the eye when you're looking at that sentencing transcript. And if you look at that sentencing transcript, the defense attorney, again, does not say, I am waiving this in exchange to get this. And this is an error that was preserved on appeal. And so knowing that this objection was preserved, a reasonable appellate attorney, all he would have to do is read the PSR, read the objections to the PSR, look at the sentencing transcript, and see if the ultimate guideline calculation that was imposed was correct and legal. And here, because of this court's later decision in Rodriguez, we know that if this issue had been raised on Molina's direct appeal, he would have been granted relief, because on Molina's direct appeal, this would have been reviewed de novo. It was preserved in the district court, and it was erroneously applied as a matter of law. In the Rodriguez case, because it was not preserved, he was still able to get relief from this court under the much less favorable plain error standard of review. So, you can . . . remanding for an evidentiary hearing is not necessary, because appellate counsel was ineffective. But the district court didn't find that. And the district court erred in doing so, because the district court erroneously . . . But we would have gained effectiveness ourselves directly? What's the best authority for that? So, counterfactually, we'd say his affidavit that just sort of says he didn't notice it, right? That's what the appellate counsel said. Well, his affidavit specifically said, counsel did not discuss his plans of withdrawing the objections with Petitioner. If Petitioner knew about counsel's desire to withdraw these objections prior to the sentencing, Petitioner would have insisted that counsel present the full merits of these requests. And that's at 165 and 223 in the record. And, where the district court got it wrong, is he said, Petitioner still never states that there was no agreement. I don't know how more clearly Mr. Molina could have stated there was no agreement by this affidavit. And, he was never permitted an opportunity to traverse. But again, you don't need to go that route, if you look at what appellate counsel did and what was available to appellate counsel at the time he filed his appeal. And, that leads us to prejudice. And, to establish prejudice, we need a reasonable probability that but for counsel's error, the outcome of the proceedings would have been different. And, that almost identically tracks the language in Rodriguez, where they said, and I quote, there was a reasonable probability that but for the district court's error in imposing this importation enhancement, Rodriguez would have received a lower sentence. And, they hold that even though Rodriguez's 324 month sentence was within the properly calculated range of 262 to 327 months. Because, at the time of sentencing, the district court stated its intention to sentence Rodriguez at the bottom of the range. And, his sentence was no longer at the bottom of that range. The same exact thing applies for Molina here. He was sentenced to 168 months. The government stated its intention to give him a sentence at the low end of the range, which it did. But, now, because we have an inapplicable enhancement, his range comes down, which is 135 to 168. So, the court still gave him something that is inside both correct and incorrect ranges, right? Correct. So, our law is sort of a little bit quirky there, and the Supreme Court has just taken cert on that, right? Well. Well, but the court gave him the absolute bottom of that range. It gave him the absolute bottom, and now he's at the end. And, the only thing cited by the court in connection with that sentence was, I want to look at the guideline, and I'm going to the very bottom of the range. That's all the court said when imposing the sentence. Right. He said, I'm going to select the low end of the range, and he gave him the bottom. Now, 168 is the top. So, it's reasonable to infer that if he had the correct guidelines range, he would have gone to the low end of the correct range. I believe that is a reasonable inference. This court found that that was a reasonable inference in Rodriguez, and also in Reinhart. This court examined a similar issue. Could we look back at his factual basis and just say there is no way on these facts he could ever be a minor participant, right? He admitted to a factual basis. That's correct. And, that factual basis had him in a considerably leadership-type role of bringing in and even the factual basis acknowledged he made financial transactions. That is correct. He did plead guilty in this case. Right. I know, but I guess I'm saying, is there any case that under those facts would give somebody a minor participant role? Well, if you look at the facts as a whole, and particularly as his original counsel laid out in the objections to PSR, he goes through all of these paragraphs and finds that in less than five of 40-some paragraphs is Molina even mentioned. And, when he is mentioned, it's in passing reference. But, again, I think what we need to look to here is what was told to the district court at the time that this happened. And, that is you have a prosecutor telling the district judge the minor role reduction is appropriate and it is accurate. Not, we're going to concede this so that we can get away from this. It is appropriate and it is accurate. So, because the minor role reduction is appropriate and accurate, the importation enhancement does not apply. This court has found that to be clear error. And, because the district court noticed its intention to sentence him to the low end of the guideline range, his sentence is no longer at the low end of that range. And, if the court does not have any further questions, we ask that the court vacate Molina's sentence and remand for resentencing. Thank you. If it please the court, my name is Mike Hardy, representing the United States. The defense had a choice at sentencing. And, the choice was either pursue all of the objections, that is duke it out with the government, as to all the objections that were raised by the attorney that the defendant earlier fired, which had very little chance for success. In which case, the defendant would be looking at a range of 210 to 262 months, which is what the pre-sentence report computed. Or, the defense could enter into a sentencing agreement with the government, whereby the defense would have an excellent chance of getting a two offense level reduction, bringing the defendant's range to 168 to 210 months. By employing the sentencing agreement, the defense got not only a two offense level reduction, it got the low end of the range. But, if you're describing that as a choice given to him by the government, I'm not sure that choice is available for the government to offer a defendant. Right? As opposing counsel said, and as the U.S. Attorney's Manual says, stipulations to untrue facts are unethical. The government cannot offer a choice that's counterfactual. So, once your assistant U.S. attorney says that he is a minor participant, that is, quote, accurate, as an officer of the court, the government can't sort of say, but, he isn't really a minor participant, we're just offering him a Faustian choice. The proposal was to offer a two offense level benefit. But, the government can't offer something. Counsel, counsel, can the government offer counterfactual facts? No. I would say that the law doesn't completely preclude. Well, the U.S. Attorney's Manual does. It's a disciplinary action against a prosecutor if you do that. Again, I'm quoting, stipulations to untrue facts are unethical. You can't offer it. Your Honor, I'm not saying that it is untrue. The facts aren't untrue. But, the lawyer said that he's a minor participant. That is, quote, accurate. That's a factual statement by the government. And, there are facts that don't preclude a mitigating role adjustment. It's just that if the parties had gone toe-to-toe in a battle and there had been a contest without this agreement, there is a very great likelihood that mitigating role would not have been found. This was an arrangement to cut the defendant a break for two levels. And, as I read the rules, that can happen at the Rule 11 stage. If it's put in writing in open court, that's a C-1B plea. We're going to agree with the defendant to recommend something. And, it's all transparent. I've never seen a case where in the middle of sentencing, the government says, hey, here's a choice. Guess what? We're going to agree to something that we don't really think is true, and you'll benefit, so you better waive every other objection you have. That's sort of what you're saying happened. If that's an accurate description, what authority do you have? Where do the rules allow that to happen at sentencing? I'm aware of no rule that prevents sentencing. Are you aware of any case that does allow that? I do not have one. It's unusual. But, Your Honor, I believe that the . . . The trouble is it creates a last-minute predicament for a defendant. He's not being consulted. I mean, the record's pretty clear. He wasn't consulted with. The court turns to him and says, do you have anything to say? His lawyer doesn't. The court doesn't. He says, yeah, I'm remorseful. I've got three kids. Go light on me. He doesn't say, let's think about this. What were all the objections that my prior counsel made? Oh, gosh, I sort of want those two points. And I know in the alternative, right, there's none of that, that the rules contemplate to protect his knowing and voluntary waiver of what might otherwise be legal leniency. The defendant's attorney's affidavit does . . . Right. . . . swears that he consulted with the defendant prior to this. Yeah, but that's where I have real problems, because the district court relied on the affidavit, but there was no hearing. So how could we ever sustain that ruling if the defendant didn't have a chance to cross the attorney? The defendant clearly doesn't think he was consulted. Because the defendant can't show prejudice from this. He got . . . Well, you're moving. Give me any case that allows a district court to find a counsel's not ineffective based on that counsel's own affidavit without an opportunity to traverse it. Any case that says that. Well, whatever defect was cured because the defense, the defendant filed a pro se motion to reconsider. All of those arguments were available to him. He got the equivalent of a response to the government's reply. And the district court had the benefit of all that when it made its ruling denying reconsideration. There's no prejudice here. In spite of Rodriguez? Pardon me? In spite of our Rodriguez decision? Yes, definitely. That is clearly distinguishable. There is no sentencing agreement or arrangement in the Rodriguez case. And if there had been, it would have affected the third and fourth prongs of the plain error rubric. Under the sentencing arrangement, where the defendant got a benefit, and I would like to make this clear to the court, the low end of the range that the defendant was facing under the pre-sentence report is 210 months. The low range the defendant got through the facilitation of the sentencing agreement was 168 months. That's a difference of 42 months. That's a 3.5-year savings of confinement that was achieved through the defense attorney's advocacy. That is not ineffective assistance of counsel. But if he is minor and the government agreed that's accurate factually, then he was entitled to the extra. There is no way he could get the enhancement for importation. So he would have gotten a lower range. No, sir. No? What would have happened if the interplay between those two guidelines was not overlooked? Then the parties would have had an opportunity to find another vehicle to achieve the same two-level result. A better way of doing that. Counsel, if you say the interplay was overlooked, then how is it that somebody could waive an objection to something that at the time was being overlooked? You're saying they waived some objection to it, but they overlooked it all at the same time. How could you knowingly waive an objection to something that your counsel was overlooking? The defendant is bound by his attorney's actions absent a Sixth Amendment violation. And there isn't a Sixth Amendment violation, even if it were deficient performance. So you're not arguing that he waived his objection to this enhancement, that they overlooked and didn't connect the dots between these two different sections of the guidelines? Well, I believe there was. If not an outright waiver, there was not an assertion. Well, there were written objections to the PSR. Those were withdrawn formally on the record. All of that was spelled out at the sentencing transcript. But included in those written objections was nothing about the interplay between these two sentencing guidelines sections. Is that right? There was, I believe, a quotation of the importation requirement that did. Point out the interplay between. That you couldn't get the one if you had the other. You couldn't get the enhancement if you had the minor role. They're not compatible together. That's right. Everyone just overlooked it. That's right. It was overlooked. And if it had been. Why doesn't that make it ineffectiveness for appellate counsel? And that's his job is to catch things that. Because it did not matter. It didn't matter the outcome because. But the only way you can say it didn't matter is if we credit the lawyer's affidavit, right? Because the district court did. It's not only the defense attorney's affidavit. It's also the government's pleadings. It's also the view that's implicitly expressed through the district judge who was there when all this unfolded. And the record indicates that there isn't a misunderstanding about what the benefit was. Your Honor has already pointed out the overlapping range. Each party got the benefit of its bargain in this case. Each party did. And basically the defendant got 3.5 years savings out of practically nothing. Out of practically nothing. But the parties can't structure around the facts. That's sort of where I stop. Once the government commits accurate facts that he's minor, then the law requires him not to be given the enhancement. They can't structure around that. It was a mistake. It was a mistake to tie the two-level reduction to the minor role adjustment. But if that oversight had been known, had been pointed out, there would have been another way to structure it, say by a variance. We'll send it back and you can structure it another way. Well, that's a possibility. Of course, the defense, if we're sending it back for resentencing, the defendant risks greater punishment. That's true. I mean, although that law is a little murky. Getting back to the Rodriguez case, I don't believe in this case there was a government recommendation for low end of the range. The Court imposed it. But in Rodriguez, there was a government recommendation for low end of the range. Also, Rodriguez is not a 2255 case dealing with ineffective assistance of counsel. And as I pointed out earlier, there is no sentencing agreement that provides the context for this whole thing. I mean, it's a small mistake and overlook, but it intersects with some complicated Sixth Amendment law. It also worries me because we definitely don't want to set a rule that I don't think any court has that encourages these last minute agreements around facts and law. In other words, it looks to me that in the middle of the hearing, it just looked tempting to everybody to say, hey, let's get this binding type agreement because you've got some objections that might worry us as the government. And so the last thing we want to do as a court would be to chart new territory and say in the middle of a sentencing hearing with difficult objections and law that's intersecting, we're just going to let the government and the defense structure something and admit to a fact that they've said is not there. So it really ought to be back the way the rules say it ought to go, which is all these recommendations get resolved at the Rule 11 process. The parties work out these guideline implications. If they want to recommend an enhancement or not, they've got to do it in writing where the defendant can contemplate, do I want to plea knowing this? That's how it's supposed to work. But what happened here is a last minute, oh, and therefore, as you say, everyone overlooked controlling law. I don't think it was a last minute arrangement because this was discussed, according to the defense attorney, before the sentencing. And the complete details of this arrangement, the two offense level reduction in exchange for a waiver of all other objections. But when the word all, do you think the word all means all other that were objected to originally or all conceivable? All of the ones that were raised as there were none other asserted. Well, but then you've got the most important one of all, which is this importation enhancement. He didn't object because he didn't see it either at the outset. That's why we're here. There was a mistake. But perhaps it would be helpful to, there is something from the restatement of contracts, because this is the sentencing agreement is, is in the nature of a contract. I'm not aware of any authority that prevents a sentencing arrangement like this, even if, even if it might be preferable to do it through a rule 11 arrangement to join it with a guilty plea. I'm not aware of, but the rule 11 language is mandatory, must be in open court. Defendant must be consulted. That sounds like it prohibits something that's not in open court at the arraignment. Well, this agreement wasn't binding on the court. Well, neither is any 11 C one B and yet the open court requirements and the writing requirements apply to those. And, and yet I don't believe rule 11 is, is mandatory in terms of applying to an arrangement of this kind. The, the, the reset, the restatement of contracts I note says it is not enough for a party to prove that he would have, that he would not have made the contract had it not been for the mistake. He must show that the resulting imbalance in the agreed upon exchange is so severe that he cannot fairly be required to carry it out. He got a break. He got a 3.5 year break. He hasn't been prejudiced by this. He hasn't, despite the mistake. That's a prong three and prong four argument. It is. Okay. On plain error, getting the council's point about, uh, the, uh, the failure to raise the issue on direct appeal. If sentencing council was not constitutionally deficient for brokering the sentencing agreement under the sixth amendment, then appellate council wasn't constitutionally ineffective for attacking that agreement on direct appeal. I'm going to ask you again. I don't think there's a criminal rule. Rule 32 doesn't contemplate brokered sentencing agreements. Not that I know of. Do you know of any case that describes the procedure and what rights a defendant has when his attorney quote brokers an agreement at sentencing? Do you have any case that describes that? No, sir. I do not. And yet in this case, what it allowed the assistant U.S. attorney do was violate the U.S. attorney's manual. He stipulated to something that he in the same breath said was untrue. Uh, I would not go that far. I believe, I believe that there is a way to, for the district court on these facts to have found mitigating role. It's just that had there been a contest, which is likely in the absence of an agreement, if, if, if the parties had gone toe to toe, then the, the defense in our view would not. Personally, I think all the rules contemplate, you got to go toe to toe. And if you don't go toe to toe, you work it out in a plea agreement, but you don't come up with an agreement in the middle of a sentencing hearing where the government's obliged to say under oath, something that isn't true. That's just a very unhealthy way to, to, to work it out or give him a break, whatever you want to call it. I think that concessions similar to this are, are common. I wish you had a case that described that though. You say that I wish you had a case. It doesn't seem healthy to me. I'd be surprised if the rules allow it, but I guess we have to figure that out. If there are no further questions, we, we, we, we, we urge based on the sentencing attorney's effort, that there isn't deficient performance, that there is not prejudice under the sixth amendment. Therefore, there was no ineffective assistance by appellate counsel. We, we urge that there is no unresolved material, factual issue that would call for a remand to the district court. And we, we urge that this court affirm the denial of 2255 relief. During opposing counsel's argument, there was a lot of discussion about what the defense agreed to. And the inquiry here is what the defendant agreed to. And so we need to focus on what the record tells us about what Molina knew and what he agreed to. And then opposing counsel talked about what would have happened. Well, we're not here to talk about what would have happened or what might have happened. We need to look at precisely what is in this record and what this record supports for this appeal. And I think as the court has suggested, there are valid and legal ways to accomplish what it seems like the parties might have wanted to do here, but they didn't do that here. And the reasons for those legal and valid ways to do that are so that we're not here. If the parties are giving full and accurate statement of what's going on to the district court, it gives the district court an opportunity to say, Mr Molina, do you understand this? Do you agree to this? And then it's in the record. We've got a knowing waiver of all of these objections and there's nothing left to appeal. And I think that's why rule 11 in Bryan have those requirements. It's so that we can have finality. Now, he says in the record, the, I don't remember the affidavit that well, I didn't remember that the affidavit said, and I consulted with my client and he wants this global solution. I suppose, here's my question for you. If the affidavit does say that, and that is true, then you'd have an intentional relinquishment that might have as probation saying, Hey, I'm going to issue my addendum on the guidelines and this is going to come in or not. Parties might just say, Hey, let's just agree. So here's the question again, why wouldn't you be wanting a remand so that the affidavit statement about whether or not the defendant was fully told about all this and agreed could be resolved with judicial certainty. We would like that as an alternative. Yeah. Our suggestion is that's not required because you can look at what appellate counsel did or didn't do with regard to the record he had at the time of the appeal, which is before this alleged quid pro quo before the affidavit. The government brief doesn't segregate out the appellate counsel's deficiency, does it? No, it does not. So we're in sort of, we don't have good adversary briefing on that issue. We don't, but I, this court's ruling in Reinhart, which was cited in Molina's brief, um, although not fully fleshed out, I think is very helpful because it specifically says failure of appellate counsel to raise a valid guideline issue is ineffective. And as a matter of fact, it goes on and it ferries out this issue of, as a sentence within the new range or within the old range. And it says, and this is, um, quoting, I believe from the Glover case under a determinant system of constrained discretion, such as the sentence and guidelines, it cannot serve as a bar to showing a prejudice. Any amount of actual jail time has sixth amendment significance. So, and as this court held in Rodriguez, even though that sentence was still within the guideline range, it is not what the judge intended and it does not make a difference. There's a very minor difference in the imposition of sentence in Rodriguez versus in this case. In Rodriguez, the government recommended that the court imposed the low range and the court did. So here the court sua sponte said, I'm going to impose the low range without the government's recommendation, but the result is still the same. And that's the court's intention to impose the low end of the range. You don't have that here when you have a proper guideline calculation, a brief note about the ruling on reconsideration. The problem with that ruling on reconsideration is that it is not accurately viewed as Molina's opportunity to trans to traverse the affidavit. And that ruling again makes findings that are not supported by the record and it overlooks Molina's affidavit in support of his 2255. So again, because we have appellate counsel not raising a valid guideline issue on Molina and we have jail time above and beyond what would have been received under the court's directive at sentencing, we asked this court to find that counsel was ineffective, vacate the sentence and remand for resentencing. Counsel, are you representing your client, Pro Bono? That's correct. Thank you. We very much appreciate your willingness to represent him today in your service to the court. You've done a great job for your client. Thank you. I'm honored to have been asked. Okay.